UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>    Defendants. | Civil Action No. 11-1972 (JEB) |

**MEMORANDUM OPINION**

This dispute – like a substantially similar case the Court decided just weeks ago – began with a Freedom of Information Act request by the American Immigration Council, an immigration law and policy group, seeking information about individuals' access to counsel during their interactions with federal immigration authorities. The prior case, Am. Immigration Council v. U.S. Dep't of Homeland Sec., No. 12-856, 2014 WL 842311 (D.D.C. March 5, 2014), addressed a FOIA request AIC filed with Immigration and Customs Enforcement. This one deals with an identical request submitted to Customs and Border Protection, a component agency of the Department of Homeland Security. After the agency invoked the protection of several FOIA exemptions and released moderately redacted versions of a number of documents, AIC challenged those redactions in this Court. Defendants now request summary judgment, while AIC rejoins that the Government has not done enough to justify its withholdings. Although CBP's explanations of the applicability of the claimed exemptions are at times thin, the Court's own *in camera* review convinces it that Defendants have the better of the argument. It will thus grant them summary judgment in full.

1

**I.     Background**

In March 2011, AIC submitted the following FOIA request concerning individuals' access to legal counsel during their interactions with U.S. Customs and Border Protection:

> [A]ny and all records which have been prepared, received, transmitted, collected and/or maintained by the U.S. Department of Homeland Security and/or U.S. Customs and Border Protection (CBP), whether issued or maintained by CBP Headquarters offices, including any divisions, subdivisions or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; and/or any other CBP organizational structure; and which relate or refer in any way to any of the following:
>
> • Attorneys' ability to be present during their clients' interactions with CBP;
>
> • What role attorneys may play during their clients' interactions with CBP;
>
> • Attorney conduct during interactions with CBP on behalf of their clients;
>
> • Attorney appearances at CBP offices or other facilities.

Mot., Exh. B (March 14, 2011, Letter from Emily Creighton to FOIA Division, U.S. Customs and Border Protection) at 1 (footnote omitted).  The request "include[d], but [was] not limited to" ten specific types of records.  Id. at 1-2.

After six months of squabbling over the adequacy of the Government's search and the extent to which certain responsive documents were already publicly available, see Mot., Exh. D (May 12, 2011, Letter from Dorothy Pullo to Emily Creighton) at 1, Defendants produced two pages of responsive records.  See Mot., Exh. G (Sept. 29, 2011, Letter from Shari Suzuki to Emily Creighton) at 10.  Dissatisfied with the agency's response and the decision on administrative appeal, AIC filed suit in this Court in November 2011.  See Opp. at 1.  The suit apparently prompted Defendants to conduct a more thorough search, which – over the course of

several months in late 2012 and early 2013 – revealed more than 300 responsive documents. See id. The Government released some of those documents in full, disclosed some in part, and withheld several altogether based on various FOIA exemptions. See id. at 1-2; ECF Nos. 20-25, 27-29, 31, 38 (status reports updating the Court on progress of production). It has now moved for summary judgment.

The parties have continued to meet to discuss the adequacy of Defendants' searches and the applicability of certain exemptions, as well as the specific redactions the Government made to the documents it produced. This process was fruitful: AIC has dropped its challenge to Defendants' search, and it decided to contest the applicability of the claimed exemptions in only ten records. See Opp. at 2; ECF No. 36. That number then dropped to nine and, eventually, to the seven documents that remain at issue today. See Mot., Exh. H (October 25, 2013, E-mail from Erin Davenport to Marian Borum) at 1. AIC, moreover, has chosen not to contest those redactions that were made pursuant to Exemption 2, 3, 6, or 7(C); it will, instead, focus only on Exemptions 5 and 7(E) and the Government's decision to withhold one document as unresponsive to its FOIA request. See Opp. at 3. AIC also disputes that Defendants have sufficiently segregated disclosable material within the disputed documents.

Three weeks ago, the Court ordered Defendants to produce the remaining seven documents for *in camera* inspection, see Order of February 25, 2014, which they accomplished ahead of schedule. Having completed its review, the Court now turns to Plaintiff's substantive challenges.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In those cases, the agency bears the ultimate burden of proof. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavit or declaration when it describes "the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." ACLU v. U.S. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to

the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(3); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," the Freedom of Information Act "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The parties, to their credit, have done an admirable job of narrowing the issues in this case. Plaintiff, for example, has chosen not to question the adequacy of the agency's search or the applicability of FOIA Exemption 2, 3, 6, or 7(C), and Defendants, for their part, have released a number of documents in full or with only light redactions. All that remains, then, are Plaintiff's challenges to (1) Defendants' decision to withhold parts of one document as non-responsive to the FOIA request; (2) Defendants' decision to invoke the protection of Exemptions 5 and 7(E) with respect to six records released in part; and (3) the segregability of all of those documents. The Court will address each issue in sequence.

5

A. Non-Responsive Document

Plaintiff's first challenge concerns the document labeled Record No. 1: pages 7 and 8 of Chapter 5 of CBP's Border Patrol Handbook. Although the agency's Chief FOIA Appeals Officer, Shari Suzuki, affirmed in her declaration that those pages were non-responsive to Plaintiff's FOIA request, see Mot., Att. 1 (Declaration of Shari Suzuki), ¶¶ 4, 21, Plaintiff is unconvinced. Instead, AIC claims, "[P]age 6 of [the Handbook] indicates that the redacted portions of pages 7 and 8 are part of a section entitled, 'Advice of Rights.'" Opp. at 8. As a result, the organization suggests, those pages "appear to shed light on, amplify, or enlarge" the released sections of the document and thus should have been disclosed. Id. at 7.

The Court has reviewed the contested pages *in camera*, and it does not agree. Plaintiff requested information related to attorneys' ability to be present during their clients' interactions with CBP and other aspects of attorneys' roles during those interactions. Pages 7 and 8 of the Handbook, however, only address CBP's procedure for advising individuals of their rights when detained. This procedure occurs outside the presence of counsel, and the redacted pages do not contain any protocols or guidelines for dealing with counsel or requests for counsel. The Court, therefore, is satisfied that the redacted information is not responsive to AIC's FOIA request, and it will grant Defendants summary judgment on Record No. 1.

B. Exemptions

That initial issue out of the way, the Court now turns to the crux of this dispute: the applicability of Defendants' claimed FOIA exemptions to six particular documents. The Government invoked Exemption 7(E) to protect sections of documents 2, 3, 4, 5, and 7. See Opp. at 4-6; Response to Order of the Court, Exh. A (Vaughn Index) at 1-6. It also argues – and

Plaintiff continues to contest – that Exemption 5 justifies withholding parts of three of the records at issue here: Documents 2, 3, and 6. See Opp. at 4-6; Vaughn Index at 1, 2, 4.

As a preliminary matter, Plaintiff has notified the Court that it has come into possession of a less-redacted version of Document 7, and it challenges only the redaction of information here that was not protected in that other version. See Opp. at 10 n.8. In other words, Plaintiff already has obtained the redacted information, and it does not explain why it needs the Court to order this material released again. As Plaintiff has already received the relief it seeks, the Court holds this request to be moot, and, consequently, it need consider only the challenges to the Exemption 7(E) redactions in documents 2, 3, 4, and 5 before moving to Exemption 5.

1. *Exemption 7(E)*

Exemption 7 authorizes the Government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" meets one of six requirements. 5 U.S.C. § 552(b)(7); see also Keys v. DOJ, 830 F.2d 337, 340 (D.C. Cir. 1987) ("[Exemption 7] exempts such documents from disclosure only to the extent that production of the information might be expected to produce one of six specified harms."). The fifth subparagraph – 7(E) – permits withholding if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In order to properly invoke Exemption 7(E), then, the agency must satisfy two requirements: First, the record must be compiled for law-enforcement purposes; and second, production must disclose either techniques and procedures for law-enforcement investigations or guidelines for law-enforcement investigations that would risk circumvention of the law.

7

a. Law-Enforcement Purposes

AIC concedes that CBP is a law-enforcement agency, see Opp. at 27-28, but it notes that agency records do not become law-enforcement records under FOIA "simply by virtue of the function the agency serves." Id. at 28 (citing King v. DOJ, 830 F.2d 210, 229 (D.C. Cir. 1987)). As a result, it is not enough that CBP is "a federal law enforcement agency" tasked with the "management, control and protection of our nation's borders," the enforcement of over 400 federal statutes, and the "responsib[ility] for keeping terrorists and terrorist weapons out of the country." Suzuki Decl., ¶ 3. Instead, the agency "must still make a showing of 'law enforcement purposes' by providing a sufficient explanation that 'establish[es] a rational nexus between [the withholding] and one of the agency's law enforcement duties,' as well as a 'connection between an individual or incident and a possible security risk or violation of federal law.'" Am. Immigration Council, 950 F. Supp. 2d at 245 (quoting Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998)).

Although Plaintiff does not challenge Defendants' compliance with the second part of this test, it does question whether CBP has proven a "rational nexus" between the redacted information in Documents 2, 3, and 5 and its law-enforcement duties. (It appears, on the other hand, that Plaintiff concedes that Document 4 satisfies this threshold requirement. See Opp. at 27-31 (discussing only 2, 3, and 5 in this context)).

Plaintiff contends that Defendants improperly "argue that the[] records were compiled for law enforcement purposes simply because they describe CBP's procedures for detaining or processing individuals." Opp. at 28. It posits that claims "concern[ing] certain procedures used when an alien is detained at a border" and subject to questioning are "insufficient to establish that this information 'relate[s] to anything that can fairly be characterized as an enforcement

proceeding' merely because CBP may, at some future time, place the individuals subject to these procedures into enforcement proceedings." Id. at 29 (quoting Jefferson v. U.S. Dep't of Justice, Office of Professional Responsibility, 284 F.3d 172, 177 (D.C. Cir. 2002)).

It is true that the Jefferson court required that an agency show that the information withheld relates to enforcement. Nothing in that case or its progeny, however, requires disclosure just because the documents relate only to future – indeed, even hypothetical – proceedings. In fact, Jefferson explicitly allowed that Exemption 7 can protect files created "in connection with investigations that . . . could result in civil or criminal sanctions," Jefferson, 284 F.3d at 177 (emphasis added), as long as they relate to investigatory activity that that could result in the government's punishing a private individual, rather than merely to "government oversight of the performance of duties by its employees." Id. at 179; see also Stern v. F.B.I., 737 F.2d 84, 89 (D.C. Cir.1984) (document may be protected if investigation "focuses directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions") (emphasis added) (internal quotation marks and citation omitted). If a FOIA defendant can show that the information withheld bears on its law-enforcement activities – even activities that are not guaranteed to result in enforcement proceedings – it will have satisfied Exemption 7's threshold requirement.

The Government argues, and the Court agrees, that each of the withheld records has a rational nexus to the agency's law-enforcement duties, including the prevention of terrorism and unlawful immigration. As Defendants put it in their Vaughn Index, Document 2, for example, describes the "procedures concerning assessments and actions" agency personnel should consider "when responding to telephonic requests from citizens and attorneys to obtain information about or contact detainees in CBP custody." Vaughn Index at 1. The nexus is plain:

9

the techniques described in Document 2 help CBP manage the interrogation and detention of people held at the border. See Suzuki Decl., ¶ 47. Release of information about those techniques could "facilitate circumvention" of law-enforcement procedures and make it harder for CBP to control the interrogation process. Whatever the policy merits of the agency's approach, Congress has determined that CBP should be tasked with preventing unlawful entry and handling the concomitant security risks. Document 2 bears directly on that mission.

Document 3 is of similar import. Defendants assert that the language redacted in that record describes "procedures concerning assessments" and actions CBP personnel should consider "when responding to requests from attorneys to be present during deferred inspections in Miami." Vaughn Index at 2. Deferred inspections, which CBP uses when it cannot make an immediate determination concerning the immigration status of an arriving traveler, are part of the agency's enforcement process, see Suzuki Decl., ¶ 3, and Document 3 relates to procedures used during such inspections. There is thus a rational nexus here, too.

Finally, although the description of Document 5 in Defendants' Vaughn Index is certainly abbreviated, the supplemental information in the agency's briefs and the Court's independent *in camera* review make it evident that the single, three-line redaction at issue crosses the Exemption 7 threshold, as the information withheld similarly relates to procedures for handling detainees and their lawyers. The Court therefore finds that Documents 2, 3, 4, and 5 were created for law-enforcement purposes.

b. Guidelines, Techniques, and Procedures

Defendants, of course, still bear the burden of demonstrating that the contested documents meet the other requirements of Exemption 7(E) – namely, that disclosure would reveal law-enforcement guidelines, techniques, or procedures "generally unknown to the public,"

10

Albuquerque Pub. Co. v. U.S. Dep't of Justice, 726 F. Supp. 851, 857 (D.D.C. 1989), and that disclosure could "reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Courts typically have found that the Government carries its evidentiary burden on this point when it provides:

> (1) a description of the technique or procedure at issue in each document, (2) a reasonably detailed explanation of the context in which the technique is used, (3) an exploration of why the technique or procedure is not generally known to the public, and (4) an assessment of the way(s) in which individuals could possibly circumvent the law if the information were disclosed.

Am. Immigration Council, 950 F. Supp. 2d at 247. While the government faces a "low bar" to show that it has properly withheld documents containing law-enforcement techniques and procedures, Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011), it must nevertheless provide a "relatively detailed justification" for each record that permits the reviewing court to make a meaningful assessment of the redactions. Strunk v. U.S. Dep't of State, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (citing Blackwell, 646 F.3d at 42)). Generic portrayals of categories of documents and vaguely formulated descriptions will not suffice. See Am. Immigration Council, 950 F. Supp. 2d at 246-47. In sum, the Government must provide sufficient facts and context to allow the reviewing court to "deduce something of the nature of the techniques in question." Clemente v. FBI, 741 F. Supp. 2d 64, 88 (D.D.C. 2010).

AIC argues that Defendants have not carried that burden on several fronts. First, it contends that the agency has "offered only conclusory allegations and insufficient descriptions and explanations of the redacted materials." Opp. at 32. But Plaintiff's leading example of that deficiency falls flat on even the most cursory inspection. Claiming that the description of Document 3 in Defendants' Vaughn Index is "vague," the organization points out that the

11

Government describes the redacted information as providing "'procedures to be used when an individual is detained during a deferred inspection,' including 'guidelines for the actions CBP personnel should take when responding to requests from attorneys to be present during deferred inspections in Miami.'" Opp. at 32-33 (quoting Mot. at 38). Even if Plaintiff were correct that this description is somewhat vague, the very next sentence in the Vaughn Index offers plenty of detail. Indeed, Defendants go on to describe the information withheld as "deliberations and analysis used in deciding how to respond to different types of inquiries. The information presents situational responses in an 'if *a* occurs then the *b* response is required because of *x*, *y*, *z* considerations.'" See Vaughn Index at 2. To describe these techniques in greater detail here would risk disclosing them – "the very harm Exemption 7(E) seeks to prevent." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012).

AIC then suggests – again only in relation to Document 3 – that the agency's descriptions are at times "contradictory." Opp. at 32. As evidence, Plaintiff points out that Defendants' Motion describes the record as guidelines or procedures to be used in deferred inspections, whereas elsewhere they characterize the redacted information as "deliberations," "recommendations," and "responses to hypothetical/potential situations." See Opp. at 33 (citing Suzuki Decl., ¶ 53). That argument fails for two reasons. First, the Court is at a loss as to why Plaintiff believes "guidelines or procedures" cannot include possible "responses to hypothetical/potential situations." Second, if Plaintiff means to suggest that by calling the record a "deliberation" Defendants forfeit the Exemption 7(E) argument, such a position is easily debunked: In its declaration and its Vaughn Index, the agency explained that it withheld Document 3 pursuant to both Exemption 7(E) and Exemption 5. Exemption 5 protects

12

deliberative documents, among others, so Defendants' decision to invoke the word "deliberations" in its description of the redactions is anything but "contradictory."

### c. Investigations or Prosecutions

Plaintiff next turns to the argument that many of CBP's redactions do not protect law-enforcement "investigations" or "prosecutions." See Opp. at 34-35 (citing Cowsen-El v. DOJ, 826 F. Supp. 532, 534 (D.D.C. 1992)). AIC claims that "much of the material withheld by Defendants . . . appears to relate to the administrative processing of individuals in the agency's custody – not investigations or prosecutions." Id. at 35 (citing Mot. at 37). Even if these records were compiled for a law-enforcement function and include agency procedures, techniques, or guidelines, Plaintiff argues, they may not be withheld unless Defendants also show that the procedures relate to investigations or prosecutions. Id. at 36. Once again, however, the organization's argument fails on the substance. As explained in Defendants' Vaughn Index and pleadings – and confirmed by the Court's *in camera* review – each of the documents describes guidelines or procedures CBP uses to deal with people suspected of violating immigration laws, their lawyers, and their families. See Vaughn Index at 1-6. AIC offers no argument for why the control of persons detained in federal custody as the result of law-enforcement operations should not be considered related to an investigation or, ultimately, a prosecution, and the Court sees none either. Cf. AIC, No. 12-856, 2014 WL 842311, (considering similar arguments in the context of the "law-enforcement-purposes" inquiry). In fact, the treatment of suspects – what rights they are afforded, how they are interrogated, how long and in what conditions they are detained – would appear to go to the heart of law-enforcement "investigations" and "prosecutions." This attack on Defendants' withholding of Documents 2 through 5 is therefore unavailing.

d. Circumvention of Law

Nor is the organization's next argument much help. AIC contends that the Government has not proven that disclosure of the documents at issue would risk circumvention of the law. The Court, however, has enough information in the <u>Vaughn</u> Index and the unredacted documents reviewed *in camera* to conclude that those documents would give individuals undisclosed information about CBP's procedures, techniques, and guidelines that could allow them to circumvent screening protocols or interfere with or thwart the agency's enforcement efforts. Document 5, for example, addresses procedures for detaining individuals in short-term hold rooms, for handling high-risk detainees, and for restraining violent detainees, and special practices for deciding when to isolate individuals from their families. <u>See</u> Suzuki Decl., ¶ 49. Release of that information could risk circumvention of detention practices and threaten officer safety by allowing suspects to skirt those safety procedures, "circumvent CBP attempts to separate human smugglers from their victims," and evade "actions related to the protection of minors." <u>Id.</u> Having reviewed the other withheld documents *in camera*, the Court believes there are similar reasons for denying disclosure of each of those records.

e. Generally Unknown to Public

Finally, AIC questions whether Defendants have shown that the redacted materials are not generally known to the public. Although Defendants do not specifically address the issue in their <u>Vaughn</u> Index or pleadings – beyond conclusory allegations to that effect – their descriptions of the documents in question, along with the Court's *in camera* review, convinces the Court that these records do contain information of which the public is not generally aware. Documents 2, 3, 4, and 5 are internal memoranda from CBP supervisors – lawyers and section chiefs, among others – to the agency's prosecutors describing the methods they may use in

interrogating detainees. There is no reason to believe that those opinions have been disseminated beyond CBP's offices. Defendants state, moreover, that the techniques described are "specifically used in the context of detaining aliens who have attempted to cross the border. As the general public is not involved in processing aliens entering the country, there would be no reason for the general public to know of these techniques." Reply at 20-21. The Court agrees.

In sum, then, the Court concludes that Defendants properly redacted Documents 2, 3, 4, and 5 under FOIA Exemption 7(E). It will therefore grant their Motion with regard to those five.

### 2. *Exemption 5*

As a result, all that remains with respect to the substantive exemptions is AIC's challenge to CBP's decision to withhold Document 6 under Exemption 5. That exemption protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency," 5 U.S.C. § 552(b)(5), and thus incorporates three traditional civil-discovery privileges: (1) the deliberative-process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege. See Cuban v. SEC, 744 F. Supp. 2d 60, 75 (D.D.C. 2010). Defendants invoke all three, but because the Court concludes that the deliberative-process privilege justifies withholding Document 6, it need not entertain arguments regarding the others.

The deliberative-process privilege exempts from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). It is intended "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9 (2001) (internal quotation marks omitted).

15

The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id.; see also Dow Jones & Co. v. DOJ, 917 F.2d 571, 573-74 (D.C. Cir. 1990). To fall under the protection of the deliberative-process privilege, withheld material must be both "predecisional" and "deliberative." Mapother v. DOJ, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Material is "predecisional" if it was "generated before the adoption of an agency policy." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). It is "deliberative" if it "reflects the give-and-take of the consultative process." Id.

Document 6 is a chain of e-mails between various CBP employees stationed at the Baltimore Port and the Acting Baltimore Area Port Director considering how the field office would respond to an inquiry from CBP Headquarters. Plaintiff challenges only two redactions from the final substantive e-mail in the chain. It argues first that the redacted information is not "predecisional" because it "describe[s] existing policies and practices, not decision-making on new practices." Opp. at 24 (citing Public Citizen, Inc., 598 F.3d at 876). As evidence for this contention, AIC points out that one person who participated in the e-mail chain described the e-mail containing the redacted information as "the final draft of [CBP's] response" to Headquarters. Plaintiff thus posits that the document may embody the ultimate response produced, observing that "nothing in the document forecloses [that] possibility." Opp. at 26.

The error in this logic is no fault of Plaintiff's, as only a later e-mail in the chain – redacted in the document produced to Plaintiff but available to the Court for *in camera* review – makes it clear that a final response to Headquarters, distinct from the response outlined in the challenged e-mail, was ultimately created. See Unredacted Version of Mot., Exh. I (Redacted Versions of Documents Produced) at ECF p. 33. Because Document 6 is a draft opinion, even if

16

that draft may have been adopted in part – or in full – the Court can conclude that it is "predecisional" with respect to the agency's decision on a final response. As the Supreme Court has explained, the deliberative-process privilege "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." Sears, 421 U.S. at 153. A draft response such as Document 6 falls into the latter camp.

Next, AIC challenges the "deliberative" nature of the redacted information in Document 6 on two grounds. First, it notes once again that "[d]ocuments that explain existing policies are not considered deliberative." Opp. at 25. As the Court just concluded, however, the redacted information in Document 6 does no such thing; instead, it is part of a draft response to an inquiry about existing policies, and, as such, it illustrates the "give-and-take of the consultative process" that courts have sought to protect. Coastal States Gas Corp., 617 F.2d at 866.

Moving on, AIC argues that "messages sent from superiors to subordinates that contain 'no hint that the [superior] is still weighing her options or wants feedback from the employees' . . . are more likely to be non-deliberative." Opp. at 26 (quoting AIC, 905 F. Supp. 2d at 220). Specifically, Plaintiff complains that "the challenged portion of Record No. 6 does not appear to be seeking comments," and "nothing in the document forecloses the possibility that this was the agency's final version." Opp. at 26. Although the Court does not "endors[e] the legal binary that AIC has drawn on this issue," see AIC, No. 12-856, 2014 WL 842311, at *8, Defendants' Vaughn Index and the Court's own *in camera* review of Document 6's redactions make clear that AIC's concern is unfounded. The Vaughn Index, on its own, provides much of the detail that AIC claims is missing, noting that Document 6 contains emails from a "lower level

17

employee" to her superior "regarding how to respond to an inquiry from . . . CBP [Headquarters]." Vaughn Index at 5. The emails, therefore, involve CBP employees of various subordinate levels and specifically discuss a request for clarification from Headquarters. The "final draft" does not even come from a supervisor – an ultimate decisionmaker regarding how to respond to the inquiry – and, as the Court has observed, *in camera* review has convinced it that the challenged redactions are not part of the agency's "final version."

In sum, the Court finds that Defendants properly redacted Document 6 under the deliberative-process privilege, and it will thus grant them summary judgment on that point.

C. Segregability

The last issue that the Court must address is segregability. FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Central, Inc., v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). Still, an agency is not obligated to segregate non-exempt material if "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." Neufeld v. IRS, 646 F.2d 661, 666 (D.C. Cir. 1981), overruled on other grounds by Church of Scientology of California v. IRS, 792 F.2d 153 (D.C. Cir. 1986).

While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. See Mead Data, 566 F.2d at 261. The agency must

provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining Government affidavits explained nonsegregability of documents with "reasonable specificity"). "In making a determination as to segregability . . . a district court judge 'may examine the contents of . . . agency records *in camera*' . . . . This Circuit has interpreted this language to give district court judges broad discretion in determining whether *in camera* review is appropriate." Id. at 577-78 (citations omitted).

Plaintiff queries whether Defendants' declaration on segregability is sufficient to carry its burden. Although the Court is inclined to side with the Government on that question, it need not delve too deeply, as its own *in camera* review of the materials suffices to persuade it that there are no segregability problems in this case. All seven contested documents feature targeted redactions, with individual words and sentences (as well as a few paragraphs) clipped to remove exempt information. Defendants, moreover, "reconsidered, at AIC's request, the redactions made in the . . . documents at issue and reduced the number of redactions whenever possible." Suzuki Decl., ¶ 50. This shows that Defendants made the required effort to segregate and disclose those portions that could be released. The non-exempt portions of these documents that have been redacted are thus "inextricably intertwined with exempt portions" and need not be further segregated. Mead Data, 566 F.2d at 260.

In a last-ditch effort to call Defendants' segregability analysis into question, AIC points out that CBP "withh[eld] . . . information that [the agency] itself released either in this litigation or under other circumstances." Opp. at 38. That some of the redactions cover information that

19

CBP has released elsewhere does not, on its own, call the Government's redactions into question. To the extent that Plaintiff's contention is a targeted attack on the segregability of certain redacted information in Document 7, moreover, that argument is moot for the reasons described in Section III.A, *supra*.

**IV. Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment with respect to Documents 1, 2, 3, 4, 5, and 6, and it will dismiss as moot Plaintiff's claim regarding Document 7. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: March 21, 2014